IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRELL HALE, | No. 4:25-CV-01243 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| J. GREENE, | |
| Respondent. | |

MEMORANDUM OPINION

JANUARY 30, 2026

Petitioner Terrell Hale was previously confined at the Federal Correctional Institution, Allenwood Low (FCI Allenwood Low), in White Deer, Pennsylvania, where he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges decisions made by Federal Bureau of Prisons (BOP) officials with respect to installment payments under the Inmate Financial Responsibility Program (IFRP). For the following reasons, the Court will deny Hale's Section 2241 petition.

## I. BACKGROUND

Hale is currently serving a 48-month sentence imposed by the United States District Court for the Eastern District of Virginia for conspiracy to commit bank fraud.[1] His projected release date, via good conduct time, is April 29, 2027.[2]

---

1 *See* Doc. 12-3 at 3.
2 *Id.* at 4.

Although he was confined at FCI Allenwood Low when he filed the instant petition, he is now incarcerated at FCI Ashland in Ashland, Kentucky.[3]

Hale asserts that while at FCI Allenwood Low, he was wrongfully placed in IFRP "refusal" status by his case manager, Laura Getz.[4] Due to this allegedly inappropriate placement, he claims he lost 145 days of First Step Act (FSA) programming, which would translate to "about two and a half . . . months off [his] sentence."[5] As relief, he requests the restoration of the FSA credits lost during his periods of IFRP refusal.[6] In his later-filed memorandum of law, Hale additionally argues that the BOP's IFRP itself is unlawful.[7]

Hale lodged the instant Section 2241 petition in this Court in July 2025. His petition is now fully briefed and ripe for disposition.

## II. DISCUSSION

As noted above, the single claim Hale asserts in his Section 2241 petition is that he was wrongfully placed in IFRP refusal status and lost FSA time credits during these periods of refusal. He also contends in his later-filed memorandum of law that the BOP's IFRP program is unlawful because it sets a restitution payment

---

[3] Doc. 1 at 1; Doc. 15.
[4] Doc. 1 at 2, 3, 6-7.
[5] *Id.* at 7.
[6] *See id.*
[7] *See* Doc. 6 at 2-8.

schedule that he maintains can only be established by the sentencing court.[8]  Hale, however, failed to exhaust administrative remedies for any of his claims. Furthermore, to the extent that administrative remedies were unavailable or exhaustion could be excused, Hale has not established a violation of the constitution or federal law such that habeas relief is due.

### A.     Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.[9]  Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[10]

---

[8] Hale additionally argues that the BOP's actions constitute an Ex Post Facto Clause violation. This argument is frivolous.  The Ex Post Facto Clause of the United States Constitution applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 383 (3d Cir. 2003) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995)).  The inquiry for an ex post facto challenge has two prongs: (1) "whether there was a change in the law or policy which has been given retrospective effect," that is, when it applies to events occurring before its enactment; and (2) "whether the offender was disadvantaged by the change." *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005).  Hale has not alleged, much less proven, that any BOP action or policy has been given retrospective effect, altered the definition of criminal conduct, or increased his criminal penalty.  Hale did not have "early release credits" canceled or revoked, as he argues.  *See* Doc. 6 at 11-12.  Rather, he was unable to <u>earn</u> FSA time credits during his period of IFRP refusal, which does not implicate an ex post facto violation.

[9] *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

[10] *Moscato*, 98 F.3d at 761-62 (citations omitted)

3

The BOP has a specific internal system through which federal prisoners can request review of any aspect of their imprisonment.[11] That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[12]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[13] Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[14] Exhaustion is likewise excused when it would be futile.[15] "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court."[16]

Hale concedes that he has not exhausted his administrative remedies.[17] He argues that exhaustion should be excused because the BOP "consistently seeks extensions to respond to remedy requests, often replying with boilerplate responses

---

[11] *See generally* 28 C.F.R. §§ 542.10-.19.
[12] *See id.* §§ 542.13-.15.
[13] *See Moscato*, 98 F.3d at 761.
[14] *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).
[15] *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).
[16] *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).
[17] *See* Doc. 6 at 9; *see also* Doc. 12 at 3; Doc. 12-2 at 6 ¶ 27.

that do not address specific concerns."[18]  He also claims that exhaustion should be excused to "halt the detr[i]mental effects caused by" the BOP's actions.[19]

Hale has not made a "clear and positive showing" that exhaustion would be futile.  His primary IFRP argument appears to be that his case manager miscalculated his monthly payment amount by failing to account for the $75.00 per month (for a total of $450.00) that should have been excluded from consideration of available funds for IFRP payment calculation.[20]  This argument is not difficult to understand or incapable of resolution by BOP administrators, who are well positioned to address IFRP-calculation concerns.  It likewise does not appear that Hale exhausted any claim regarding his contention that the IFRP itself is unlawful.

To the extent that Hale contends that exhaustion is futile because pursuing his claims through the full administrative process would take too much time, this argument has been consistently rejected by district courts, primarily because it would incentivize intentionally skirting the administrative process and waiting to file a Section 2241 petition until the petitioner's claimed release date is bearing down on the parties and the court.[21]  "[T]he calamity—if any—which [Petitioner]

---

[18] *See* Doc. 6 at 9.
[19] *See id.*
[20] *See id.*; Doc. 14 ¶¶ 8-15; 28 C.F.R. § 545.11(b).
[21] *See, e.g.*, *Bortolotti v. Knight*, No. 22-cv-, 2022 WL 17959577, at *3 (D.N.J. Dec. 27, 2022) ("Courts have rejected these time restriction arguments because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course."); *Ortiz v. Zickefoose*, No. 10-cv-6767, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011) (collecting cases); *Velez v. Zickefoose*, No. 10-cv-3992, 2010 WL 5186158 at *3-4 (D.N.J. Dec. 15,

might be facing is of his own making, and such hypothetical self-inflicted distress cannot serve as a basis for excusing the exhaustion requirement."[22]

Hale failed to press his IFRP-related claims through the BOP's longstanding administrative process and has not established a basis for excusing the exhaustion requirement. Nevertheless, assuming for the sake of argument that administrative remedies were unavailable to him[23] or that exhaustion could be excused, Hale's habeas claims are meritless.

### B. IFRP Calculation Claim

First, Hale has not established that the BOP's IFRP calculations or his placement in refusal status violated his federal rights. As part of Hale's sentence, he was ordered to pay $666,082.00 in restitution.[24] Hale recounts that when he was first incarcerated at FCI Allenwood Low in 2023, his IFRP payment was set at $25.00 per quarter, an amount he agreed to pay.[25]

Hale's IFRP payment, however, was sharply increased in October 2024 to $150.00 per month, and then again in January 2025 to $175.00 per month.[26] These increases appear to be based on the large amount of deposits Hale received in his

---

    2010)(explaining that "such self-serving strategy has never been rewarded by the courts with habeas relief"); *Shoup v. Shultz*, No. 09-cv-0585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009).

22  *Shoup*, 2009 WL 1544664, at *5.
23  *See* Doc. 13 at 13 (claiming that he was denied access to BP-11 forms to appeal to General Counsel "on several occasions").
24  *See* Doc. 12-2 ¶ 6; Doc. 12-4 at 7.
25  *See* Doc. 14 ¶ 9; Doc. 12-2 at 5 ¶ 18; Doc. 12-5 at 12.
26  *See* Doc. 12-5 at 6, 8.

inmate trust fund account over the preceding six months.[27] Hale agreed to both IFRP increases and his signature appears on the Individualized Needs Plans,[28] although he claims that he challenged the increases and was "coerced" into signing the new IFRP agreements.[29] His IFRP payment was later decreased to $50.00 per month in June 2025,[30] and then to $25.00 per month in late July 2025.[31]

Hale has not established how these IFRP calculations violated BOP policy, his constitutional rights, or federal law. Under the relevant regulations, the BOP can increase an inmate's IFRP payment from the minimum $25.00 per quarter by "taking into consideration the inmate's specific obligations, institution resources, and community resources."[32] This appears to be exactly what the BOP did in Hale's case when it increased his IFRP payment in light of his large restitution order and the thousands of dollars deposited into his trust fund account.

The only substantive argument in Hale's petition regarding an improper IFRP payment calculation is that his $175.00-per-month calculation by Getz failed to exclude from available funds the $75.00 per month reserved for telephone communication.[33] Yet simple math demonstrates that this argument fails. Hale

---

[27] *See* Doc. 12-7 at 15 (noting $2,543.00 in trust fund deposits over prior six months); *id.* at 19 (noting $1,782.26 in trust fund deposits over prior six months).
[28] *See id.* at 14-21.
[29] *See* Doc. 6 at 2.
[30] Doc. 12-7 at 24.
[31] Doc. 12-5 at 2.
[32] 28 C.F.R. § 545.11(b)(1).
[33] *See id.* § 545.11(b).

was noted to have trust fund deposits over the preceding six months totaling $1,782.26, reflecting an average monthly deposit of $297.04. Subtracting the $175.00-per-month IFRP payment from this amount leaves $122.04 in available monthly funds, well exceeding the required $75.00 for telephone communication.

As Respondent avers, an inmate may be placed in IFRP "refusal" status when he either refuses to pay the IFRP payment or does not have sufficient funds in his inmate trust fund account to make the required payment.[34] Thus, when Hale either refused to pay or had insufficient funds to pay the required monthly IFRP payment, he was placed in "refusal" status for FSA purposes.[35] Those dates were November 18, 2024, to February 11, 2025, and April 10, 2025, to July 25, 2025.[36]

Hale has not shown how his IFRP payment calculations or placement in refusal status were erroneous, much less a violation of his federal rights. Accordingly, his claim alleging improper IFRP calculations and lost FSA credits is without merit.

### C. IFRP Legality Claim

The gravamen of Hale's memorandum of law and traverse (which are largely identical) is that the BOP does not have the authority to establish a restitution payment schedule for court-imposed restitution.[37] He asserts that the

---

[34] See Doc. 12-2 at 6 ¶ 24.
[35] See id. at 6 ¶ 23; Doc. 12-10 at 2-3.
[36] See Doc. 12-2 at 6 ¶ 22.
[37] See Doc. 6 at 2-8; Doc. 13 at 2-8.

sentencing court must set the restitution payment schedule and that delegating this duty to the BOP is illegal. This argument likewise fails in light of Hale's voluntary IFRP participation and judgment of sentence.

Under the Mandatory Victims Restitution Act of 1996 (MVRA),[38] the district court must specify "the manner in which, and the schedule according to which, the restitution is to be paid[.]"[39] In fixing this schedule, "the court must consider the financial resources, projected earnings and other income, and financial obligations of the defendant,"[40] and can order the defendant to provide "a single lump-sum payment, periodic payments, or, if the defendant is indigent, nominal periodic payments."[41] The restitution schedule, however, must be set by the sentencing court and is nondelegable.[42]

In its judgment, the United States District Court for the Eastern District of Virginia ordered Hale to pay $666,082.00 in restitution, with payment to begin "immediately."[43] If restitution could not be paid in full immediately, Hale was to pay "at least $200.00 per month, to commence within 60 days after release from confinement."[44] It thus appears that the sentencing court ordered that Hale's

---

[38] 18 U.S.C. §§ 3663A-3664 (1996).
[39] 18 U.S.C. § 3664(f)(2); *United States v. Coates*, 178 F.3d 681, 683 (3d Cir. 1999).
[40] *United States v. Johnson*, 66 F. App'x 320, 322 (3d Cir. 2003) (nonprecedential) (citing 18 U.S.C. § 3664(f)(2)(A)-(C)).
[41] *Id.* (citing 18 U.S.C. § 3664(f)(3)(A)-(B); *Coates*, 178 F.3d at 683).
[42] *Coates*, 178 F.3d at 685.
[43] *See* Doc. 12-4 at 7-8.
[44] *See id.* at 8.

monetary penalties be paid in full immediately, rather than providing a schedule of partial payments during his incarceration.[45] This decision was within the sentencing court's discretion.[46] To the extent that Hale seeks to challenge the validity of the restitution order itself, "such a challenge should have been made upon direct appeal."[47]

If the BOP were *forcing* Hale to make IFRP installment payments based on its own calculations, he may have a valid claim that such involuntary periodic payments conflict with his judgment of sentence. But this is not what is happening. Rather, Hale takes issue with the BOP's increase in his IFRP payment amount. However, by *voluntarily* entering into the BOP's financial program, Hale "personally provided the BOP the authority to collect restitution funds."[48] As the United States Court of Appeals for the Third Circuit has noted, there is nothing prohibiting an inmate "from contributing additional monies to restitution he owes, especially when doing so—and being placed on IFRP status—confers benefits that would otherwise be lost."[49] And while an inmate's participation in the IFRP "cannot be compelled,"[50] Hale has at all times agreed to voluntarily participate in

---

[45] *See id.*
[46] *See* 18 U.S.C. § 3664(f)(3)(A) ("A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.").
[47] *Duronio v. Werlinger*, 454 F. App'x 71, 73 n.3 (3d Cir. 2011) (nonprecedential).
[48] *Id.* at 73 (internal quotation marks and citation omitted).
[49] *Id.*
[50] *Id.* (quoting *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010)).

10

making IFRP payments toward his restitution so that he can obtain the benefits of such participation. Those benefits include—among other things—being able to participate in UNICOR, not receiving a commissary spending limit, not being placed in the "lowest housing status," being able to be placed in community-based programs, and being able to participate in residential drug treatment programs.[51] Moreover, because one of Hale's FSA risk and needs assessments is "Finance/Poverty" and the IFRP is therefore a recommended program for him,[52] participation in the IFRP allows Hale to accrue FSA credits toward time off his sentence.

      Hale has not shown that his participation in the IFRP program is involuntary or violates his judgment of sentence. If Hale takes issue with the IFRP payment amount calculated by the BOP, he must press his claim with that agency. And if unsuccessful, he is free to refuse to participate in the IFRP program, as participation is voluntary. In sum, Hale has not demonstrated that BOP officials violated any regulation, policy, law, or constitutional right, so the Court must deny his habeas petition.

---

[51] *See* 28 C.F.R. § 545.11(d).
[52] *See* Doc. 12-2 at 5 ¶ 20.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Hale's petition for a writ of habeas corpus under 28 U.S.C. § 2241. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge